UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JASON LEE KELLER                                          PETITIONER

V.                                    CIVIL ACTION NO. 1:21-CV-134-KHJ

BURL CAIN, et al.                                       RESPONDENTS

ORDER

In this capital habeas case, Petitioner Jason Lee Keller asserts claims in his
[27] Amended Petition for a Writ of Habeas Corpus that he did not present in state
court. He filed a [30] Motion to Stay so that he may exhaust his state-court remedies
by pursuing a successive petition for post-conviction relief in the Mississippi Supreme
Court. For the following reasons, the motion is denied.

I.      Background

In June 2007, Keller robbed and murdered Hat Nguyen at the convenience
store she owned in Biloxi, Mississippi. *Keller v. State*, 138 So. 3d 817, 829 (Miss.
2014). He entered the store and asked Nguyen for cigarettes. *Id.* at 830. When
Nguyen turned to get them, he shot her. *Id.* Nguyen ran from the store, trying to
escape. *Id.* But Keller followed her, forced her back inside, and shot her three more
times—including a final, lethal shot to the back of her head. *Id.* He then stole her
money and ran. *Id.* Officers apprehended Keller later that day, shooting him in the
process. *Id.* He confessed to Nguyen's murder in a recorded statement taken at the
hospital. *Id.*

A Mississippi state-court jury found Keller guilty of capital murder and
sentenced him to death. *Id.* at 831. Keller appealed, and the Mississippi Supreme

Court affirmed his conviction and sentence. *Id.* at 877. The United States Supreme Court denied Keller's petition for a writ of certiorari. *Keller v. Mississippi*, 574 U.S. 1159 (2015).

In June 2015, Keller filed a motion in the Mississippi Supreme Court for leave to file a petition for post-conviction relief. *See* Mot. Leave Proceed Trial Ct. Pet. Post-Conviction Relief, *Keller v. State*, No. 2014-DR-00808-SCT (Miss. June 12, 2015); Suppl. Mot. Leave Proceed Trial Ct. Pet. Post-Conviction Relief, *Keller v. State*, No. 2014-DR-00808-SCT (Miss. July 13, 2016). The court granted the motion in part and denied it in part, finding all issues raised in the petition meritless, except for his ineffective-assistance-of-counsel claim. *See* Order at 3, *Keller v. State*, No. 2014-DR-00808-SCT (Miss. May 23, 2017). It granted Keller leave to file a petition for post-conviction relief to assert that his state-court trial counsel provided ineffective assistance by failing to investigate, discover, and present mitigating evidence during the guilt and sentencing phases of trial. *Id.*

Keller also argued his trial counsel failed to conduct adequate mitigation interviews with witnesses or contact "the vast majority" of people familiar with his history, character, or background. Suppl. Mot. Leave Proceed Trial Ct. Pet. Post-Conviction Relief at 14, *Keller v. State*, No. 2014-DR-00808-SCT (Miss. July 13, 2016). He noted that Dr. Beverly Smallwood, the psychologist appointed to assess his competence to stand trial, advised his trial counsel that Dr. Smallwood recommended "a mitigation study regarding [Keller's] psychological functioning." But Keller claimed his trial counsel did not investigate or obtain a study of his life

history or family background to present as mitigation evidence. *Id.* at 14–15. In fact, Keller alleged that his trial counsel first met one of the mitigation witnesses outside the courtroom just before he testified. *Id.* at 15. Keller argued those circumstances deprived the jury of "accurate and extensive evidence" that would have provided more context for his actions and a "balanced estimation of [his] character and culpability." He maintained that compromised the jury's sentencing decision. *Id.* at 15–16.

The state trial court held an evidentiary hearing on the claim in November 2018. *See* Order & J. at 2, *Keller v. State*, No. 2014-DR-00808-SCT (Miss. Aug. 26, 2019). The trial court denied Keller's Petition for Post-Conviction Collateral Relief. *Id.* at 52. It generally found that Keller had a good family life growing up and that his school history was similarly insignificant. *Id.* at 33–34.

The trial court also dismissed Keller's expert-witness testimony as lacking credibility. *Id.* at 35. The lengthy opinion outlined problems with each expert's testimony, from basic factual errors to inferential leaps unsupported by the evidence. *Id.* at 37–43. Ultimately, the trial court found that his trial counsel's representation did not fall below an objective standard of reasonableness and that Keller was not prejudiced because the evidence presented post-conviction would not have altered the outcome of his trial. *Id.* at 47–51.

Keller appealed, and the Mississippi Supreme Court affirmed. *Keller v. State*, 306 So. 3d 706 (Miss. 2020). Like the trial court, the Mississippi Supreme Court concluded the evidence "showed a caring family attentive to Keller's needs," and his

placement in special education courses "ha[d] a negligible effect on [his] sentencing profile." *Id.* at 712. It also noted that, although Dr. Smallwood recommended a mitigation study of Keller's psychological functioning, "there [was] no 'per se rule that trial counsel is ineffective at mitigation unless a particular type of expert is retained.'" *Id.* at 713 (quoting *Ronk v. State*, 267 So. 3d 1239, 1272 (Miss. 2019)). Finally, the Mississippi Supreme Court rejected Keller's arguments that the trial court inappropriately ignored evidence in his favor and manufactured arguments supporting trial counsel's competence. *Id.* at 714. Although the trial court erroneously conducted factual research outside the record, it was harmless. *Id.* at 714–15.

Keller petitioned for habeas relief in this Court under 28 U.S.C. § 2254. [23]. He later amended his Petition. [27]. He asserts twenty-one grounds for relief. The parties agree that Keller failed to present certain grounds to a state court. Keller filed a [30] Motion to Stay to exhaust those claims via a successive post-conviction petition in the Mississippi Supreme Court. The claims at issue are Grounds 1, 7, 8, and 9.

Ground 1 alleges Keller's state-court trial counsel's failure to investigate and discover mitigating evidence constituted ineffective assistance. *Id.* at 11–30. Ground 7 alleges his trial counsel's failure to ensure all trial proceedings were recorded also constituted ineffective assistance. *Id.* at 54–56. Ground 8 alleges the trial court improperly admitted a statement Keller provided in the hospital after an officer shot him, and his state-court appellate counsel's failure to obtain an expert opinion

4

on the statement's credibility constituted ineffective assistance. *Id.* at 56–74. Finally, Ground 9 alleges the prosecution improperly referenced suppressed statements in its opening, and his trial counsel's failure to object constituted ineffective assistance. *Id.* at 74–75.

## II.   Standard

One purpose of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")[1] "is to require prisoners first to exhaust state-court remedies before seeking federal relief . . . ." *Broadnax v. Lumpkin*, 987 F.3d 400, 406 (5th Cir. 2021); 28 U.S.C. § 2254(b)(1)(A). "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." *Smith v. Quarterman*, 515 F.3d 392, 400 (5th Cir. 2008).

Generally, district courts should dismiss "mixed" petitions—those including both exhausted and unexhausted claims. *Strickland v. Thaler*, 701 F.3d 171, 174 (5th Cir. 2012). But, "because exhaustion is based on comity rather than jurisdiction, there is no absolute bar to federal consideration of unexhausted habeas applications." *Id.* A district court may deny an unexhausted claim on the merits even if the petitioner does not exhaust his state-court remedies. *Id.*

District courts also may stay a habeas case involving a mixed petition to allow the petitioner to present his unexhausted claims to the state court before he

---

[1] AEDPA limits the district courts' ability to grant habeas relief. AEDPA was designed to "curb the abuse of the statutory writ of habeas corpus, and to address the acute problems of unnecessary delay and abuse in capital cases," *Graham v. Johnson*, 168 F.3d 762, 764 (5th Cir. 1999), and to "further the principles of comity, finality, and federalism." *Williams v. Taylor*, 529 U.S. 420, 436 (2000).

returns to federal court for review of the perfected petition. *Rhines v. Weber*, 544 U.S. 269, 274–79 (2005). Such stays should only be available in "limited circumstances" involving the petitioner's "good cause for [his] failure to exhaust his claims first in state court." *Id.* at 277. "[E]ven if a petitioner ha[s] good cause for that failure, the district court abuse[s] its discretion if it grant[s] him a stay when his unexhausted claims are plainly meritless." *Id.* Finally, mixed petitions "should not be stayed indefinitely." *Id.* The Court should impose "reasonable time limits" on exhausting the claims in state court and "condition the stay" on the petitioner pursuing the unexhausted claims briefly after the stay is entered. *Id.* at 278.

In sum, the district court should stay a mixed petition "if the petitioner ha[s] good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* If the Court determines a stay is inappropriate, it "should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." *Id.*

III.   Analysis

Keller argues the Court should stay this case pursuant to *Rhines*. As noted above, he seeks a stay to exhaust his state-court remedies for Grounds 1, 7, 8, and 9 in a successive petition for post-conviction relief in the Mississippi Supreme Court.

Respondents counter that (1) Ground 1 cannot serve as a basis to stay because Keller has exhausted it; (2) Keller fails to show good cause for his failure to

exhaust the other claims; (3) Keller's unexhausted claims are plainly meritless; (4) *Grayson v. State*, 118 So. 3d 118 (Miss. 2013), does not provide a basis to stay this federal case; and (5) alternatively, the Court should not grant an indefinite stay. [32] at 2–16.

1.  Ground 1

The parties dispute whether Keller exhausted Ground 1. The Court first considers whether the claim is exhausted before considering Keller's arguments in favor of a stay.

In Ground 1, Keller asserts that his trial counsel provided ineffective assistance by failing to investigate and discover mitigating evidence. [27] at 11–30. He maintains that his trial counsel should have (1) interviewed more members of his family, (2) better prepared them to testify at the mitigation hearing, (3) investigated his "struggles in school and his parents' lack of involvement" in his education, and (4) retained an expert to assess his psychological and neurological functioning. *Id.* at 14–15, 17, 19–20. He also notes Dr. Smallwood recommended that trial counsel obtain an "in-depth study into Mr. Keller's personal history . . . ." *Id.* at 15. Keller asserted the same arguments in his post-conviction petition. *See* Mot. Leave Proceed Trial Ct. Pet. Post-Conviction Relief at 39–132, *Keller v. State*, No. 2014-DR-808-SCT (Miss. June 12, 2015); Suppl. Mot. Leave Proceed Trial Ct. Pet. Post-Conviction Relief at 14–107, *Keller v. State*, No. 2014-DR-808-SCT (Miss. July 13, 2016); Rebuttal State's Resp.  Mot. Leave Proceed Trial Ct. Pet. Post-

Conviction Relief at 4–26, *Keller v. State*, No. 2014-DR-808-SCT (Miss. Dec. 5, 2016).

To satisfy AEDPA's exhaustion requirement, "the federal claim must be fairly presented to the state courts." *Picard v. Connor*, 404 U.S. 270, 275 (1971). "A fair opportunity requires that all facts necessary to support the federal claim were before the state courts and the habeas petitioner must have fairly presented to the state courts the substance of his federal habeas corpus claim." *Harper v. Lumpkin*, 19 F.4th 771, 778 (5th Cir. 2021) (citing *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). "[W]here petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001). In other words, the petitioner must rely "on identical facts and legal theories in both state and federal habeas proceedings." *Edwards v. Morris*, No. 4:21-cv-104, 2022 WL 6299498, at *5 (N.D. Miss. July 14, 2022) (citing *Picard*, 404 U.S. at 275).

Keller admits he presented Ground 1 to the state court. *See* Rebuttal in Support of Motion to Stay Case Pending Exhaustion of State Remedies [30] at 3. He argues, however, that the claim is not exhausted because "state post-conviction counsel failed to develop [and] . . . . present it adequately at Mr. Keller's evidentiary hearing." *Id.* He maintains post-conviction counsel's failure to properly develop a claim "is sufficient for a stay under *Rhines.*" *Id.* (citing *Bunyard v. Davis*, No. 2:15-cv-1790, 2019 WL 134564, at *2 (E.D. Cal. Jan. 7, 2019); *Bunyard v. Davis*, 2:15-cv-01790, 2018 WL 6065389, at *3 (E.D. Cal. Nov. 20, 2018)). But those decisions

address whether a petitioner demonstrated good cause for a stay rather than claim exhaustion. *Bunyard*, 2019 WL 134564 at *2; *Bunyard*, 2018 WL 6065389 at *3. So those decisions do not apply.

Keller presented the same ineffective-assistance argument in his post-conviction petition that he asserts in Ground 1. Accordingly, he has satisfied the AEDPA exhaustion requirement on Ground 1.

2.  Good Cause

Keller contends his failure to exhaust is attributable to his post-conviction counsel's ineffective assistance. To obtain a stay, Keller must demonstrate "good cause for [his] failure to exhaust his claims first in state court." *Rhines*, 544 U.S. at 277. This raises the question of whether post-conviction counsel's ineffective assistance may constitute good cause. The Court agrees with other jurisdictions that it may.

 "There is little authority on what constitutes good cause to excuse a petitioner's failure to exhaust." *Blake v. Baker*, 745 F.3d 977, 980 (9th Cir. 2014). The Supreme Court has suggested that "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005). The Ninth Circuit has held that "good cause turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify" the failure to exhaust. *Blake*, 745 F.3d at 982. "An assertion of good cause without evidentiary support will not typically amount to a reasonable excuse justifying a petitioner's

failure to exhaust." *Id.* And both the Ninth and Fifth Circuits have described "good cause" as an "equitable" standard. *See Ruiz v. Quarterman*, 504 F.3d 523, 529 n.17 (5th Cir. 2007); *Blake*, 745 F.3d at 982.

District courts in the Fifth Circuit have found "good cause" for failing to exhaust when (1) the petitioner received "inadequate assistance from his retained attorney," *Chandler v. Epps*, No. 1:08-CV-93, 2008 WL 4683421, at *1 (N.D. Miss. Oct. 22, 2008); (2) the petitioner was ignorant of his obligation to exhaust claims, and a dismissal would have prevented him from returning to federal court because of AEDPA's statute of limitations, *Walker v. Lumpkin*, No. H-20-3501, 2022 WL 2239851, at *7 (S.D. Tex. June 22, 2022); (3) a petitioner alleged difficulty in hiring an attorney and AEDPA's statute of limitations would preclude refiling, *Brown v. Davis*, No. 3:18-CV-174, 2021 WL 2907889, at *4 (N.D. Miss. July 9, 2021); (4) the petitioner's unexhausted claim arose from a retroactively applied change in applicable law, *Folse v. Kent*, No. 18-121, 2020 WL 7753075, at *1–2 (M.D. La. Dec. 29, 2020); (5) the "legal landscape" surrounding petitioner's claim was "confusing and ambiguous" when petitioner pursued his initial state post-conviction relief, *Cade v. Lumpkin*, No. 3:17-CV-3396, 2020 WL 4877586, at *1 (N.D. Tex. Aug. 19, 2020); (6) the state appellate court effectively instructed petitioner not to raise claims of ineffective assistance of trial counsel on post-conviction, *Maize v. Louisiana*, No. 18-9393, 2019 WL 2469678, at *4 (E.D. La. June 13, 2019); and (7) the state appellate court would not consider claims of ineffective assistance of trial counsel, *Thompson v. Hooper*, No. 17-11674, 2018 WL 2013105, at *4 (E.D. La. Apr.

30, 2019); *Quinn v. Hooper*, No. 21-1779, 2022 WL 671846, at *3 (E.D. La. Mar. 7, 2022).

Other jurisdictions have found "good cause" when (1) the petitioner provided evidence of ineffective assistance of state post-conviction counsel, *Blake*, 745 F.3d at 983; *Rhines v. Weber*, 408 F. Supp. 2d 844, 848 (D.S.D. 2005); (2) the petitioner had no counsel in his state post-conviction proceeding, *Dixon v. Baker*, 847 F.3d 714, 720 (9th Cir. 2017); (3) a dismissal would jeopardize the timeliness of the petitioner's habeas petition as to the unexhausted claims, *Randall v. Superintendent Mahanoy SCI*, 835 F. App'x 675, 677 (3rd Cir. 2020); (4) the petitioner's counsel discovered undisclosed *Brady* evidence after petitioner had filed his federal habeas petition, *Eakes v. Sexton*, 593 F. App'x 422, 431 (6th Cir. 2014); (5) the petitioner did not become aware of the factual basis of a claim until after his state post-conviction proceeding concluded, and he had exercised due diligence in developing the pertinent facts, *Cunningham v. Hudson*, 756 F.3d 477, 486 (6th Cir. 2014); and (6) the prosecution's wrongful withholding of information caused the petitioner's failure to exhaust, *Jalowiec v. Bradshaw*, 657 F.3d 293, 304–05 (6th Cir. 2011).

A brief history of the right to effective assistance of counsel in Mississippi illuminates whether ineffective assistance of post-conviction counsel may constitute good cause. In 1999, the Mississippi Supreme Court held that indigent death-row post-conviction petitioners have a right to appointed counsel, attorney compensation, and reasonable litigation expenses. *Jackson v. State*, 732 So. 2d 187, 191 (Miss. 1999). The state legislature later passed the Mississippi Capital Post-

11

Conviction Counsel Act,[2] and the Mississippi Supreme Court amended Mississippi Rule of Appellate Procedure 22 to establish the requisite qualifications for serving as a petitioner's counsel in a capital post-conviction proceeding. Miss. R. App. P. 22(d), (e).

Although Mississippi supplied post-conviction counsel for prisoners sentenced to death, no recognized right to effective post-conviction counsel existed under either state or federal law. *See, e.g.*, *Bishop v. Epps*, 288 F. App'x 146, 149 (5th Cir. 2008) (per curiam); *Brown v. State*, 948 So. 2d 405, 413 (Miss. 2006). In 2013, the Mississippi Supreme Court, held that Mississippi law confers a right to effective post-conviction counsel in death-penalty cases. *Grayson*, 118 So. 3d at 126.

Federal law still recognizes no right to effective post-conviction counsel. *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); 28 U.S.C. § 2254(i). But under certain circumstances, ineffective assistance of post-conviction counsel can constitute cause for defaulting claims of ineffective trial counsel. *Martinez v. Ryan*, 566 U.S. 1, 9–14 (2012); *Trevino v. Thaler*, 569 U.S. 413, 423–29 (2013). The *Martinez* Court held that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. at 17. The *Trevino* Court expanded *Martinez* to include cases "where . . . a state

---

[2] *See, e.g.*, Miss. Code Ann. §§ 99-15-18, 99-39-5, 99-39-7, 99-39-23, 99-39-27, 99-39-28, 99-39-101, *et seq.* (Miss. 2000).

procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal . . . ." 569 U.S. at 429.

But the Court cannot consider claims of ineffective assistance of post-conviction counsel, even under *Martinez* or *Trevino*, if not first presented to the state court. 28 U.S.C.A. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."). In response to *Grayson*, Mississippi federal courts have stayed many capital habeas cases so petitioners could return to state court to present a claim of ineffective assistance of post-conviction counsel. *See, e.g.*, *Hutto v. Cain*, No. 3:20-cv-98, 2021 WL 2785336 (S.D. Miss. July 2, 2021); Order Granting Motions to Stay and Abate, *Ronk v. Cain*, No. 2:19-CV-346-HSO (S.D. Miss. Feb. 23, 2021), ECF No. 35; Memorandum Op. and Order, *Brown v. Epps*, No. 2:07-CV-49-HTW (S.D. Miss. Mar. 31, 2017), ECF No. 55. To the Court's knowledge, the Mississippi Supreme Court has not refused to consider any of these claims, even if presented years after the initial post-conviction petition was decided. *See, e.g.*, *Brown v. State*, 306 So. 3d 719, 748 (Miss. 2020).

At least one Circuit has held that ineffective assistance of post-conviction counsel can constitute good cause for a stay under *Rhines*. *See Blake*, 745 F.3d at 983. Moreover, ineffective assistance of post-conviction counsel can constitute cause

for defaulting claims of ineffective trial counsel. *Trevino*, 569 U.S. at 423–29;
*Martinez*, 566 U.S. at 9–14; *see also Mullis v. Lumpkin*, 47 F.4th 380, 392–93 (5th
Cir. 2022) (holding plausible ineffective-assistance-of-post-conviction-counsel claim
could excuse the procedural default of ineffective-assistance-of-trial-counsel claims).
But, as noted above, this Court generally may not address Keller's claim that he
received ineffective assistance of counsel on post-conviction because he has the right
to raise that claim in state court and has not done so. *Rhines*, 544 U.S. at 277. One
Circuit held that, although the *Rhines* analysis requires the Court to address
some aspects of unexhausted claims, district courts must not "deprive state courts of
the opportunity to address a colorable . . . claim in the first instance and grant relief
if they believe it is warranted." *Dixon*, 847 F.3d at 722.

The Court agrees that ineffective assistance of post-conviction counsel can
constitute good cause for failing to exhaust claims in state court before seeking
habeas relief. *See Blake*, 745 F.3d at 983; *Chandler*, 2008 WL 4683421 at *1;
*Rhines*, 408 F. Supp. 2d at 848. That said, the Court's review of such claims is
"deferential, presuming that counsel's conduct falls within the wide range of
reasonable professional assistance." *United States v. Williamson*, 183 F.3d 458, 462
(5th Cir. 1999). "[C]ounsel who files a merits brief need not (and should not) raise
every nonfrivolous claim, but rather may select from among them in order to
maximize the likelihood of success . . . ." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Although "possible to bring a *Strickland* claim based on counsel's failure to
raise a particular claim, . . . it is difficult to demonstrate that counsel was

14

incompetent." *Id.* Generally, ignored issues must be clearly stronger than presented issues to overcome the presumption of effective assistance. *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986), *cited with approval in Smith*, 528 U.S. at 288; *cf. Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995) ("[T]o show prejudice in regard to a claim that the attorney failed to raise a certain defense, the petitioner must show that the defense likely would have been successful at trial."). Moreover, "[i]neffective assistance of counsel cannot arise from the failure to raise a legally meritless claim," *United States v. Slape*, 44 F.4th 356, 360 (5th Cir. 2022), or conclusory allegations, *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998).

Keller asserted the next claims in his Motion for Leave to Proceed in the Trial Court with a Petition for Post-Conviction Relief:

1)     trial counsel provided ineffective assistance by failing to object to the State's introduction of inadmissible evidence about Keller's prior convictions during the penalty phase of trial;

2)     trial counsel provided ineffective assistance by failing to prevent jurors from considering a felony charge, but not yet conviction, of armed robbery as an aggravating factor;

3)     trial counsel provided ineffective assistance by failing to investigate and discover significant mitigating evidence;

4)     trial counsel provided ineffective assistance by failing to object to prosecutorial misconduct in closing argument;

5)     appellate counsel provided ineffective assistance by failing to raise prosecutorial misconduct in closing argument on appeal;

6)     trial counsel provided ineffective assistance by failing to rebut or challenge the State's improper expert testimony;

7)     appellate counsel provided ineffective assistance by failing to raise the State's improper expert testimony on appeal;

8)    trial counsel provided ineffective assistance by failing to object when the trial court improperly struck a member of the venire for cause;

9)    the trial court deprived Keller of due process by improperly striking a member of the venire for cause;

10)   appellate counsel provided ineffective assistance of counsel by failing to raise on appeal the trial court's improper striking of a member of the venire;

11)   trial counsel provided ineffective assistance by failing to ensure that the jurors properly applied the instructions and fully considered all mitigating evidence;

12)   the cumulative prejudice of all Keller's claims of ineffective assistance of trial counsel;

13)   the State presented false and misleading evidence by telling the jurors that Keller had been previously convicted of armed robbery;

14)   Keller was deprived of his right to a trial by an impartial jury because a juror concealed material information during voir dire; and

15)   Mississippi's method of execution would violate the Eighth Amendment prohibition of cruel and unusual punishments.

*Keller v. State*, No. 2014-DR-00808-SCT (Miss. June 12, 2015).

Keller asserts three habeas claims that his post-conviction counsel did not present in state court. First, the claim asserted in Ground 7—that Keller's trial counsel was ineffective for not ensuring all trial proceedings were recorded—is not "clearly stronger than those presented" by Keller's post-conviction counsel. *Gray*, 800 F.2d at 646. As noted below, the claim is plainly meritless, and "[i]neffective assistance of counsel cannot arise from the failure to raise a legally meritless

claim." *Slape*, 44 F.4th at 360. But that claim is not *clearly* stronger than the fifteen other claims Keller asserted in his post-conviction petition. Keller devotes a little over two full pages to the trial recording issue, but about nineteen pages to his counsel's alleged failure to investigate and present mitigating evidence. *See* [27] at 11–30, 54–56.

Second, the claims asserted in Ground 8 and 9—that Keller's appellate counsel provided ineffective assistance by failing to obtain an expert opinion related to the admission of Keller's recorded statement from the ICU and that Keller's trial counsel provided ineffective assistance by failing to object to the prosecutor's reference in opening to multiple "statements" from Keller—are also not "clearly stronger than those presented" by Keller's post-conviction counsel. *Gray*, 800 F.2d at 646. As noted below, the claims are plainly meritless, and "[i]neffective assistance of counsel cannot arise from the failure to raise a legally meritless claim." *Slape*, 44 F.4th at 360. Still, Grounds 8 and 9 are not *clearly* stronger than the fifteen claims Keller asserted in his post-conviction petition, for the same reasons provided below.

In sum, Keller fails to demonstrate good cause for his failure to exhaust his ineffective-assistance-of-post-conviction-counsel claims.

### 3. Plainly Meritless

"[E]ven if a petitioner had good cause for [his failure to exhaust], the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." *Rhines*, 544 U.S. at 277. "In determining whether a

claim is 'plainly meritless,' principles of comity and federalism demand that the federal court refrain from ruling on the merits of the claim unless it is perfectly clear that the petitioner has no hope of prevailing." *Dixon*, 847 F.3d at 722. The Court must not "deprive state courts of the opportunity to address a colorable federal claim in the first instance and grant relief if they believe it is warranted." *Id.*

    a.  Ground 7

Keller's Ground 7 claim asserts (1) the trial court erred by not recording all the proceedings, (2) his trial counsel's failure to ensure all trial proceedings were recorded constituted ineffective assistance, and (3) his post-conviction counsel failure to raise the issue constituted ineffective assistance.

        1.  Trial Court's Failure to Record Proceedings

To the extent that Keller contends the trial court erred by failing to record critical portions of the trial, he has exhausted that claim. He alleged on direct appeal that his constitutional rights were violated because "numerous proceedings, including bench jury qualification and voir dire, bench objection conference, recess proceedings with judge and attorneys, jury strikes and selections, receipt of jury notes, and other matters were conducted off-record." *Keller*, 138 So. 3d at 835–36. The Mississippi Supreme Court held that Keller failed to preserve the issue for appeal by not raising a contemporaneous objection. *Id.* at 837. Any claim that the trial court erred by not recording parts of the proceeding was "fairly presented to the highest state court" and therefore exhausted. *Smith*, 515 F.3d at 400.

Keller's claim that the trial court erred by not recording all proceedings is plainly meritless. "[A] complete verbatim transcript is not always required to ensure that a defendant's right to meaningful appellate review is satisfied." *Higginbotham v. Louisiana*, 817 F.3d 217, 222 (5th Cir. 2016) (quotation omitted). ["T]he record is adequate for full appellate review so long as it contains the portions necessary to address the alleged errors below." *Id.* (quotation omitted). Habeas "claims based on incomplete transcripts must show that the absence of such a transcript prejudiced the defendant's appeal." *Id.* (quotation omitted) (alteration in original).

Keller does not articulate how the trial court's failure to record certain parts of the proceeding prejudiced his appeal. *See* [30]. Likewise, his Amended Petition merely states the "failure to ensure a full recording of all proceedings denied petitioner a fair trial and appeal because there was no way to ensure a complete record noting all objections." [27] at 56. He does not identify specific unrecorded objections or explain how the failure to record them prejudiced his appeal. *Id.* Although the Mississippi Supreme Court found that some of Keller's claims were procedurally barred on appeal because he failed to make a contemporaneous objection at trial, *Keller*, 138 So. 3d at 836, 842, 847, 858, 860, 864–65, 871, Keller has not alleged—in his Motion or Amended Petition—that his counsel's objections were unrecorded. By asserting ineffective assistance claims in this habeas case and on post-conviction, he has admitted that trial counsel failed to make certain objections, rather than the trial court simply failing to record them. His claim is plainly meritless.

19

2.   Ineffective Assistance of Trial Counsel

Keller also argues his trial counsel was ineffective because they did not

ensure that all trial proceedings were recorded. "[A] criminal defendant's Sixth

Amendment right to counsel is denied when a defense attorney's performance falls

below an objective standard of reasonableness and thereby prejudices the defense."

*Guidry v. Lumpkin*, 2 F.4th 472, 488 (5th Cir. 2021) (per curiam) (quotation

omitted). In applying that standard, a court "must indulge a strong presumption

that counsel's conduct falls within the wide range of reasonable professional

assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Hindsight must not

distort the court's analysis. *Moore v. Quarterman*, 534 F.3d 454, 468 (5th Cir. 2008).

"Conclusory allegations" of prejudice are not sufficient; rather, "the defendant must

affirmatively prove prejudice." *Tuesno v. Cain*, 198 F.3d 242, 1999 WL 824557, at *3

(5th Cir. Oct. 7, 1999) (per curiam). "Absent a showing that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different, the defendant's [ineffective assistance] claim will fail."

*Id.* (citation omitted).

Keller's claim is like the one brought in *Schwander v. Blackburn*, 750 F.2d

494, 502 (5th Cir. 1985). The *Schwander* petitioner argued his trial counsel was

ineffective for failing to raise certain objections and motions and that his appellate

counsel "was ineffective for not obtaining or reviewing the omitted portions of the

trial record" *Id.* at 498–501. The Fifth Circuit held the petitioner failed to

demonstrate that the lack of a complete trial record prejudiced his appeal: "Even if

20

the transcript had been furnished in its entirety, the record does not reflect that any objections were made . . . . Since these objections were necessary to preserve error for review on direct appeal, no error existed and thus no prejudice resulted from the incomplete transcript." *Id.* at 502.

Likewise, Keller does not demonstrate that the lack of a complete transcript prejudiced his appeal. Although he asserts the "failure to ensure a full recording of all proceedings denied [him] a fair trial and appeal because there was no way to ensure a complete record noting all objections," [27] at 56, he does not identify specific unrecorded objections or explain how the failure to record them prejudiced his appeal. So Keller does not allege facts showing that his attorney's failure to ensure all trial proceedings were recorded prejudiced his defense. This claim is also plainly meritless.

### 3.   Ineffective Assistance of Post-Conviction Counsel

Keller also claims that his post-conviction counsel was ineffective for failing to raise the issue. His claim is plainly meritless because he has no constitutional right to effective post-conviction counsel. *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017); *Coleman*, 501 U.S. at 752.

### b.   Ground 8

Ground 8 pertains to the trial court's admission of a recorded statement elicited from Keller while he was in the intensive care unit ("ICU"). [27] at 56–74. Keller provided three recorded statements while hospitalized: two in the emergency room, and a third in the ICU. The trial court held an evidentiary hearing,

suppressed the first two statements, and allowed the third one to be entered into evidence. *Keller*, 138 So. 3d at 831.

Finally, he claims that his post-conviction counsel provided ineffective assistance by failing to raise the issue.

### 1.  Trial Court Error

Keller's claim that the trial court erred by admitting the third recorded statement has been exhausted because he asserted the claim on direct appeal, and the Mississippi Supreme Court rejected it. *Keller*, 138 So. 3d at 847–54. Accordingly, any claim that the trial court erred by admitting the third recorded statement was "fairly presented to the highest state court." *Smith*, 515 F.3d at 400.

### 2.  Ineffective Assistance of Trial Counsel

Keller also claims that his trial counsel provided ineffective assistance by failing to obtain an expert opinion on (1) whether Keller fabricated a story to ingratiate himself with officers, (2) whether he remembered the events about which he was questioned, and (3) whether he was highly susceptible to the officers' suggestions when providing his statement.

As for an attorney's failure to call certain witnesses:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular

defense. This requirement applies to both uncalled lay and expert witnesses.

*Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010).

Keller presented an affidavit from Dr. Mary Willis. Ex. H Am. Pet. [27-8]. Dr. Willis reviewed Keller's medical records from his hospitalization after his arrest, the recorded statements he provided while in the hospital, and the transcript of the supplemental suppression hearing held in April 2013.[3] [27-8] at 1. Although Keller's drug screen showed recent use of opiates, marijuana, and cocaine, Dr. Willis found no documentation of chronic drug use that would have bearing on Keller's mood and other factors related to his decision-making processes when the statements were given. *Id.* She also noted that Keller was prescribed morphine and hydrocodone. *Id.* at 3. The medical records did not provide enough information for Dr. Willis to determine whether Keller possessed the capacity to make medical decisions. *Id.* She speculated that he "was trying to ingratiate himself" with the officers and stated that it was "reasonable to conclude that Jason Keller might not have been at his cognitive baseline . . . due to a combination of cocaine withdrawal and the physical and mood effects thereof; his ongoing pain; recent pain medication . . . ; blood loss . . . ; and sleep deprivation." *Id.* at 5.

Dr. Willis also stated that "chronic substance abuse can lead to confabulation – unintentional creation of false/inaccurate memories to compensate for gaps in

---

[3] Before rendering its final decision on appeal, the Mississippi Supreme Court remanded the case to the trial court "to conduct a supplemental evidentiary hearing on the questions of whether any of the three statements made by Keller to law enforcement officers was coerced, and, if so, whether any information learned in a coerced confession was used to gain additional information from Keller." *Keller*, 138 So. 3d at 829.

memory." *Id.* She claimed that "[i]ndividuals with confabulation are very susceptible to incorporating suggestion or leading questions into these unintentional false memories." *Id.* She observed that Keller had "clear gaps in his memory of the event in question," and that "[h]is recollection seemed more detailed when he was prompted with information by the interviewer." *Id.* Dr. Willis, however, admitted that she did "not know how much of what Mr. Keller said during that interview was borne out by other forensic evidence," and that she had not "evaluated Mr. Keller himself." *Id.*

As noted above, to prove ineffective assistance of counsel arising from the failure to call an expert witness, Keller must "nam[e] the witness, demonstrate[e] that the witness was available to testify and would have done so, set[ ] out the content of the witness's proposed testimony, and show[ ] that the testimony would have been favorable to a particular defense." *Woodfox*, 609 F.3d at 808. Dr. Willis's affidavit does not provide that she "was available to testify and would have done so." *Id.* And she admitted that she lacked sufficient information to determine whether Keller's drug use was chronic, whether it would have affected his mood and decision-making processes, or whether he possessed the capacity to make medical decisions. [27-8] at 3. Although she explained that chronic drug use can cause "confabulation," she conspicuously stopped short of asserting that was the case here. *Id.* at 5. She admitted that she was not familiar with the other evidence in the case and that she had not evaluated Keller. *Id.*

At most, the affidavit establishes that these issues could have bearing on the credibility of Keller's statement and that Dr. Willis would investigate them further. The affidavit does not establish prejudice because it does not demonstrate that "but for counsel's [failure to call Dr. Willis as a witness], the result of the proceeding would have been different . . . ." *Tuesno*, 1999 WL 824557, at *3.

Even if the testimony in the affidavit had been admitted at trial to impeach Keller's recorded statement, Keller has not established that it would have altered the outcome of the trial given the other evidence against him. First, Keller admitted in the recorded statement that he shot Nguyen. Keller told Michael Brown, the investigator who took Keller's statement, that he had gone into the store to "get a pack of cigarettes." Tr. Recorded Statement [22-16] at 18. Specifically, he asked for Doral Menthol 100's. *Id.* at 26. Keller stated: "Don't know why I did it, but I did it. I asked her for a pack of cigarettes. When she turned around, I pulled my gun out and when she turn back around, I told her give me all the money. She started screaming no. I just shot her." *Id.* at 18. Keller said he shot her in "either the shoulder, arm, or chest area," *id.* at 19, and "she ran out the door." *Id.* at 20. He continued: "So, I ran after her, and she didn't stop. I mean, she stopped, and then she seen me coming. She was like okay, okay, okay. Okay, I'll give you the money . . . ." *Id.* "[S]he just turned around and walked back. We got in. I shot her one more time and then, . . . I mean, I shot her like three times. It ain't even affecting her, ya know. I guess it's cause the twenty-two or whatever." *Id.* "[S]he fell. She hit the floor, but while she was laying there, . . . she still trying to fight. So, I just shot her

at close range to the back of the head." *Id.* Keller said he took her money, stole another vehicle, and went to Keesler Federal Credit Union to exchange the rolls of coins for cash. *Id.* at 21–22.

Other evidence at trial corroborated Keller's statement. Terry Ann Muffi testified that she entered Nguyen's store on the morning of June 21, 2007, to buy some tobacco and rolling papers. Trial Tr. Vol. 5 [22-5] at 71. No one was at the counter, but she noticed a pack of cigarettes on the floor. *Id.* at 72. She described them as "Doral Light cigarettes," but she admitted that she was unsure. *Id.* She eventually discovered Nguyen's body. *Id.* at 72–73. Her description of Nguyen's location and wounds resembled Keller's statement. *Id.* at 72–73, 75.

 Brown testified that the Biloxi Police Department "received a lot of phone calls beginning probably around two o'clock that day on the 21st indicating that [Keller] may be a suspect in the case." *Id.* at 112. After Keller had been arrested, Brown took his recorded statement in the hospital. *Id.* at 115–19. Brown described Keller's demeanor when he gave the statement: "He was very calm, very cooperative, spoke to us, answered every question that we needed him to answer." *Id.* at 115. "He was very coherent." *Id.*

Joshua Duncan, the branch manager at the Keesler Federal Credit Union in Biloxi, authenticated surveillance video taken at the bank at 9:47 a.m. on June 21, 2007. *Id.* at 125–30. The video showed Keller enter the bank, take rolls of coins out of a box, and exchange them for cash. *Id.* at 128.

Dr. Paul McGarry, an expert in forensic pathology, performed an autopsy on Nguyen. *Id.* at 134. He found four gunshot wounds. *Id.* at 135–51. She had one in the center of her abdomen. *Id.* at 135. McGarry testified that this would have been the first shot. *Id.* at 147. In his opinion, it would not have been fatal, and she would have still been able to walk, talk, and move, albeit painfully. *Id.* at 135. He also testified that she would have been able to run out of the store after the first shot. *Id.* at 147–48.

Dr. McGarry testified that he could not be sure which order the second and third shots happened. *Id.* at 147. He found one gunshot wound four inches above her right ear. *Id.* at 138. Dr. McGarry testified that it did not penetrate her skull, and that she would have still been able to move and talk, similar to taking a hard blow to the side of the head. *Id.* at 138–39. He found another on the left side of her head, two inches above her left ear. *Id.* at 143. It penetrated her skull, lodging in the left side of her brain. *Id.* at 145. Dr. McGarry testified that, after this shot, Nguyen would have been "either totally unconscious or brain damaged enough to be less than fully conscious . . . , but still no central vital structures destroyed." *Id.* at 146. He stated that ,although she would "still be alive," she "would be unable to think clearly, unable to know what was going on but probably not fully comatose." *Id.* "She would still be able to move," and she would "be able to make noises and say words." *Id.*

Finally, Dr. McGarry testified that the final, lethal shot, *id.* at 147, entered the back and right side of Nguyen's head between the bones of her neck, traveling

through her brain stem into her brain. *Id.* at 149–50. He testified that powder burns

on her neck signified that "the gun was placed against her neck and fired upward

into her head." *Id.* at 150. This shot would have been fatal, quickly causing death.

*Id.* at 150–51. After explaining each gunshot wound, Dr. McGarry described what

he could infer about the sequence of events from the wounds. Trial Tr. Vol. 6 [22-6]

at 2–6. When considered in its totality, Dr. McGarry's testimony substantially

corroborates the events described in Keller's recorded statement.

　　To prove that his trial counsel provided ineffective assistance by failing to

call an expert witness, Keller must "nam[e] the witness, demonstrate[e] that the

witness was available to testify and would have done so, set[ ] out the content of the

witness's proposed testimony, and show[ ] that the testimony would have been

favorable to a particular defense." *Woodfox*, 609 F.3d at 808 (quotation omitted).

Keller presented an affidavit from Dr. Willis, but he has not established that she

was available to testify and would have done so. Nor has he demonstrated that her

testimony would have altered the outcome of the trial, given the other evidence

highlighted above. At most, her testimony would have impeached the credibility of

Keller's own confession, but it would have not affected the rest of the evidence.

Accordingly, Keller's claim that his trial counsel provided ineffective assistance by

failing to call Dr. Willis as an expert is plainly meritless. *E.g.*, *United States v.*

*Cortez*, No. 21-50152, 2022 WL 3928521, at *3 (5th Cir. Aug. 31, 2022) (per curiam)

(holding defendant failed to make substantial showing that counsel's failure to

present expert testimony was prejudicial because defendant did not explain how evidence would have altered outcome of trial given other evidence against him).

### 3. Post-Conviction Counsel Ineffective Assistance

Keller also claims that his post-conviction counsel was ineffective for not raising this issue. To the extent that Keller intended to assert this as a habeas claim, it is plainly meritless because there is no constitutional right to effective post-conviction counsel. *Davila*, 137 S. Ct. at 2065; *Coleman*, 501 U.S. at 752.

### c. Ground 9

Ground 9 includes claims related to a comment the prosecution made during its opening statement. As discussed above, Keller gave three recorded statements while in the hospital, and the trial court suppressed two of them. Keller alleged that the prosecution told the jury during its opening statement: "[Y]ou're also going to hear testimony from the investigator as to what the defendant was doing. He provided statements to law enforcement . . . ." [27] at 74. Keller contends this comment violated his Fifth and Fourteenth Amendment rights. He also contends that his trial counsel provided ineffective assistance by failing to make a contemporaneous objection to the comment.

### 1. Trial Court Error

To the extent that Keller contends the trial court erred by allowing the prosecution to refer to multiple statements during opening, that claim has been exhausted because it was "fairly presented to the highest [state] court." *Smith*, 515

F.3d at 400 (alteration original). Keller asserted the claim on direct appeal, and the Mississippi Supreme Court rejected it. *Keller*, 138 So. 3d at 860–61.

 2.  Trial Counsel Ineffective Assistance

Keller also claims that his trial counsel provided ineffective assistance by failing to contemporaneously object to the prosecution's reference to multiple statements. "[A] criminal defendant's Sixth Amendment right to counsel is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Guidry*, 2 F.4th at 488 (quotation omitted). When assessing an ineffective-assistance claim, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The analysis must not be distorted by hindsight. *Moore*, 534 F.3d at 468. Conclusory allegations and speculation are insufficient to state a colorable habeas claim. *Tuesno*, 1999 WL 824557, at *3; *Robinson*, 2 F.3d at 571. Rather, "the [petitioner] must affirmatively prove prejudice." *Tuesno*, 1999 WL 824557, at *3. "Absent a showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, the [petitioner's ineffective assistance] claim will fail." *Id.* (citation omitted).

First, Keller does not establish that his trial counsel's failure to object to the prosecution's comment was objectively unreasonable. "Often, the decision as to whether or not to object to particular statements . . . is a matter of tactics. Since an objection may tend to emphasize a particular remark to an otherwise oblivious jury,

the effect of objection may be more prejudicial than the original remarks of opposing counsel." *Walker v. United States*, 433 F.2d 306, 307 (5th Cir. 1970). Keller does not overcome the presumption that his trial counsel made a tactical decision to not object to the comment, rather than draw more attention to it.

Even if his counsel's failure to object was unreasonable, Keller does not establish it was prejudicial.  "In reviewing allegedly improper prosecutorial statements, it is not enough that the prosecutor's remarks were undesirable or even universally condemned. The relevant question is whether the comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Phillips v. Hargett*, 12 F.3d 208, 1993 WL 529780, at *2 (5th Cir. 1993) (per curiam) (quotations omitted). The Court inquires "whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Id.* (quotation omitted). "[A] prosecutor's remarks will render a trial fundamentally unfair only if the remarks evince persistent and pronounced misconduct, or the evidence is so insubstantial that (in probability) but for the remarks no conviction would have occurred." *Id.* at *3 (quotation omitted).

Keller essentially complains of one letter—the prosecutor's reference to "statements," rather than "statement." Although possible that jurors noticed the prosecutor's use of the plural, it is improbable that they would have later noticed that the prosecution only introduced evidence of a single statement. Even if the jurors did notice, the prosecutor's failure to introduce more than one statement during its case-in-chief could just have as easily damaged his own credibility.

Even so, the trial court instructed the jury that "[a]rguments, statements and remarks of counsel are intended to help you understand the evidence and apply the law but are not evidence. If any argument, statement or remark has no basis in the evidence, then you should disregard that argument, statement or remark." *Keller*, 138 So. 3d at 861. This instruction cured prejudice, if any, that might have accrued from the prosecutor's remark.

Moreover, Keller cannot establish that his counsel's failure to object prejudiced his defense, given the overwhelming evidence against him, as discussed above. *See Martinez v. Quarterman*, 270 F. App'x 277, 293 (5th Cir. 2008) (holding counsel's failure to object prosecutor's use of the term "mass murder" to describe a double homicide not prejudicial given other evidence); *Brazley v. Cain*, 35 F. App'x 390, 2002 WL 760471, at *5 (5th Cir. 2002) (per curiam) (concluding "prosecutor's improper opening statement," along with court's failure to give curative instruction, not prejudicial considering other evidence against defendant).

IV.     Conclusion

The Court has considered all arguments. Those it does not address would not have changed the outcome. For all these reasons, Petitioner Jason Keller does not demonstrate good cause for a stay, and his unexhausted habeas claims are plainly meritless. Accordingly, his [30] Motion to Stay Proceedings Pending Exhaustion of State Remedies is DENIED.

"[I]f a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the

petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to federal relief." *Rhines*, 544 U.S. at 278. The Court ORDERS Keller to file a Second Amended Petition which omits the unexhausted claims within 28 days of the entry of this opinion, or no later than **January 11, 2023**. Keller may not otherwise amend his petition. If Keller does not timely file a Second Amended Petition omitting the unexhausted claims, then the Court may dismiss the entire Petition without additional notice.

Respondents shall then file an answer within 14 days after the filing of the Second Amended Petition, or no later than **January 25, 2023**. Keller may file a rebuttal pleading within 7 days of the filing of the answer, or no later than **February 1, 2023**. These time periods are shorter than the Court typically grants in capital habeas cases because the parties have already pleaded the exhausted claims. The only required and permitted action is to remove sections of the pleadings related to the unexhausted claims.

Keller shall file his memorandum of law in support of the Second Amended Petition within 30 days of the filing of his rebuttal pleading, or no later than **March 3, 2023**. Again, this time period is shorter than the Court typically grants in capital habeas cases. But Keller's brief deadline was already imminent, and this Order does not require or permit the expansion of his claims beyond those already pleaded.

Respondents shall file a memorandum of law in opposition to the Second Amended Petition within 60 days of the filing of Petitioner's memorandum, or no

later than **May 2, 2023**. Keller may then file a rebuttal brief within 30 days of the filing of Respondents' brief in response, or no later than **June 1, 2023**.

SO ORDERED, this the 14th day of December, 2022.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE